**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| JEFFREY KEITH SHAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18CV268 |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social | ) | |
| Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Jeffrey Keith Shaw, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 12; see also Docket Entry 11 (Plaintiff's Memorandum); Docket Entry 13 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] The United States Senate confirmed Andrew M. Saul as the Commissioner of Social Security on June 4, 2019, and he took the oath of office on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

# I.  PROCEDURAL HISTORY

Plaintiff applied for DIB, alleging a disability onset date of October 24, 2013.  (Tr. 194-95.)  Upon denial of that application initially (Tr. 83-98, 122-25) and on reconsideration (Tr. 99-120, 129-33), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 134-35).  Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing. (Tr. 50-82.)  The ALJ subsequently determined that Plaintiff did not qualify as disabled under the Act.  (Tr. 30-45.)  The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 12, 14), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings:

> 1.   [Plaintiff] meets the insured status requirements of the . . . Act through March 31, 2018.
>
> 2.   [Plaintiff] has not engaged in substantial gainful activity since October 24, 2013, the alleged onset date.
>
> . . .
>
> 3.   [Plaintiff] has the following severe impairments: degenerative disc disease, degenerative joint disease of the right hip, sciatica, chronic obstructive pulmonary disease (COPD), neuropathy, dysphagia, alcohol dependence disorder, anxiety, and depression.
>
> . . .
>
> 4.   [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals

the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] had the residual functional capacity to perform light work . . . with a sit/stand option with the ability to change position twice per hour. He cannot climb ropes, ladders, or scaffolds; and can occasionally climb ramps and stairs. [Plaintiff] should avoid concentrated exposure to hazards, such as moving machinery or unprotected heights. He is limited to simple, routine, and repetitive tasks of unskilled work. [Plaintiff] must have no constant change in routine, no complex decision-making, and no crisis situation [sic]. [Plaintiff] must have no production rate, and can stay on task for two hours at a time. [Plaintiff] is limited to occasional interaction with the public.

. . .

6. [Plaintiff] is unable to perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from October 24, 2013, through the date of this decision.

(Tr. 35-45 (internal parenthetical citations omitted).)[2]

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits."  Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

---

[2] Although Plaintiff's hearing counsel moved to amend the disability onset date from October 24, 2013, to August 25, 2015 (see Tr. 69, 80, 261), the ALJ did not rule on that motion, either at the hearing (see Tr. 50-82), or in his decision (see Tr. 30-45).  That oversight did not prejudice Plaintiff, however, because a determination that Plaintiff did not qualify as disabled from October 24, 2013, to November 22, 2017, necessarily encompasses a ruling of non-disability from August 25, 2015, to November 22, 2017.

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of

---

[3] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4]  A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[5]  Step four then requires the ALJ to assess

---

[4] "Through the fourth step, the burden of production and proof is on the claimant.  If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses

whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled.  Id. at 179-80.   However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job."  Hall, 658 F.2d at 264-65.  If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

## B.  Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ's failure to identify the apparent conflict[s] between the [VE's] testimony and the [Dictionary of Occupational

---

the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)."  Hines, 453 F.3d at 562-63.

[6] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

Titles ('<u>DOT</u>')] regarding the requirements of the occupations of Non-[P]ostal [M]ail [C]lerk, Parking-[L]ot [A]ttendant and Room [A]ttendant is harmful error that prevents the ALJ's Step 5 denial of benefits from being supported by substantial evidence" (Docket Entry 11 at 5 (bold font and single-spacing omitted)); and

2) "[t]he Defendant's assertion of the affirmative defense of *res judicata* was improper" (<u>id.</u> at 15 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (Docket Entry 13 at 9-20.)

### 1. Conflicts Between VE's Testimony and the <u>DOT</u>

Plaintiff's first assignment of error contends that "[t]he ALJ's failure to identify the apparent conflict[s] between the [VE's] testimony and the [<u>DOT</u>] regarding the requirements of the occupations of Non-[P]ostal [M]ail [C]lerk, Parking-[L]ot [A]ttendant and Room [A]ttendant is harmful error that prevents the ALJ's Step 5 denial of benefits from being supported by substantial evidence."  (Docket Entry 11 at 5 (bold font and single-spacing omitted).)  According to Plaintiff, the ALJ's failure to identify and resolve these apparent conflicts violated Social Security Ruling 00-4p, <u>Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions</u>, 2000 WL

1898704 (Dec. 4, 2000) ("SSR 00-4p"), and Pearson v. Colvin, 810

F.3d 204 (4th Cir. 2015).  (Docket Entry 11 at 11-15.)  Those

contentions ultimately fail to carry the day.

SSR 00-4p places an affirmative duty on an ALJ to elicit an

explanation from the VE as to any "apparent unresolved conflict"

between the VE's testimony and the DOT:

> Occupational evidence provided by a VE . . . generally
> should be consistent with the occupational information
> supplied by the [DOT].  When there is an apparent
> unresolved conflict between VE . . . evidence and the
> [DOT], the [ALJ] must elicit a reasonable explanation for
> the conflict before relying on the VE . . . evidence to
> support a determination or decision about whether the
> claimant is disabled.  At the hearings level, as part of
> the [ALJ's] duty to fully develop the record, the [ALJ]
> will inquire, on the record, as to whether or not there
> is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added).  "[A]n ALJ has

not fulfilled his affirmative duty merely because the [VE] responds

'yes' when asked if her testimony is consistent with the [DOT],"

Pearson, 810 F.3d at 208 (internal quotation marks omitted); thus,

"[t]he ALJ independently must identify . . . where the [VE's]

testimony seems to, but does not necessarily, conflict with the

[DOT]," id. at 209 (emphasis added); see also id. (rejecting the

Commissioner's argument that an "apparent" conflict meant only an

"obvious" one).

Here, the ALJ queried the VE whether an individual limited to

"light work with a sit-stand option, with the ability to change

position twice per hour; no climbing of ropes, ladders and

scaffolds; . . . occasional climbing of ramps and stairs; . . .
[no] concentrated exposure to hazards such as moving machinery and
unprotected heights; . . . simple, routine, repetitive tasks
['SRRTs'] of unskilled work; no constant change in routine[;] no
complex decision-making; no crisis situation; no production rate
work; and [the ability] to stay on-task for two hours at a time,"
could perform any jobs existing in significant numbers in the
national economy. (Tr. 78.) In response, the VE opined that such
an individual would remain capable of performing Plaintiff's past
relevant work ("PRW") as an Asphalt Distributor Tender and the jobs
of Non-Postal Mail Clerk, Gate Attendant, and Parking-Lot Attendant
(see Tr. 78-79), and provided the corresponding DOT codes for the
jobs, as well as their incidence in the national economy (see Tr.
77, 79).

The ALJ then asked the VE the impact on the cited jobs of an
additional limitation to occasional interaction with the public,
and the VE responded that such a limitation would preclude the
Asphalt Distributor Tender and Gate Attendant jobs, but provided
the additional job of Room Attendant, along with its DOT code and
incidence in the national economy. (See Tr. 79.)[7] Next, the ALJ
inquired if the VE's testimony harmonized with the DOT, to which

_____

[7] The DOT reflects the title of "Cleaner, Housekeeping" for the job to
which the VE referred as "Room Attendant." DOT, No. 323.687-014 (Cleaner,
Housekeeping), 1991 WL 672783. For ease of reading, this Recommendation will
refer to the job as "Room Attendant."

the VE responded affirmatively and clarified that "the information supporting the sit-stand option . . . is actually . . . based on my . . . training, education and experience in the areas of jobs placement and job analysis." (Tr. 79-80.)[8]

The ALJ subsequently adopted the VE's testimony as to Plaintiff's ability to perform the three jobs in question:

> To determine the extent to which [the RFC's non-exertional limitations] erode the unskilled light occupational base, the [ALJ] asked the [VE] whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]. The [VE] testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as:
>
> 1.   Non postal mail clerk, [DOT] #209.687-026, light, SVP 2, with 91,000 jobs in the national economy;
>
> 2.   Parking-lot attendant, [DOT] #915.473-010, light, SVP 2, with 52,000 jobs in the national economy;
>
> 3.   Room attendant, [DOT] #323.687-014, light, SVP 2, with 103,000 jobs in the national economy.
>
> Pursuant to SSR 00-4p, the [ALJ] has determined that the [VE's] testimony is consistent with the information contained in the [DOT]. For topics not contemplated by the [DOT], like the sit/stand option, the [ALJ] takes judicial notice that the [VE] relied on her training, education, and experience.
>
> Based on the testimony of the [VE], the [ALJ] concludes that, considering [Plaintiff's] age, education, work experience, and [RFC], [Plaintiff] is capable of making

---

[8] Although Plaintiff's counsel cross-examined the VE regarding the impact on the available jobs of a limitation to no more than three hours of standing and walking in an eight-hour day and to no more than 15 pounds of occasional lifting, he did not query the VE regarding the conflicts identified in Plaintiff's instant motion for judgment. (See Tr. 80-81.)

a successful adjustment to other work that exists in
    significant numbers in the national economy.

(Tr. 44-45 (emphasis added).)  Plaintiff contends that apparent,

unresolved conflicts exist concerning all three of the cited jobs.

a. <u>Parking-Lot Attendant</u>

    Plaintiff maintains that, because the Parking-Lot Attendant

job "requires a worker to drive automobiles [and] would also

clearly expose a worker . . . to being in and around moving

automobiles," that job conflicts with the RFC's limitation to avoid

concentrated exposure to moving machinery.  (Docket Entry 11 at 6

(citing Tr. 39).)  In addition, Plaintiff argues that "the [<u>DOT</u>]

describes the job . . . as including the activity of 'patrol[ling

the] area to prevent thefts from parked automobiles'" (<u>id.</u> (quoting

<u>DOT</u>, No. 915.473-010 (Parking-Lot Attendant), 1991 WL 687865

(G.P.O. 4th ed. rev. 1991))), which "would conflict with the ALJ's

RFC limitation that there should be 'no crisis situation[s]' in the

work environment" (<u>id.</u> at 7 (citing Tr. 39)).  Finally, Plaintiff

contends that the <u>DOT</u> describes tasks such as "handing customers

tags to identify their vehicles . . ., directing customers to

parking spaces, calculating and collecting parking fees from

customers and returning vehicles to customers," which would

conflict with the RFC's restriction to occasional interaction with

the public.  (<u>Id.</u> (citing Tr. 39).)

The DOT's description of the Parking-Lot Attendant job does not create an apparent conflict with the VE's testimony that an individual who must avoid concentrated exposure to moving machinery could perform that job. Although the job includes tasks performed both in and around motor vehicles, the DOT's description lists "Moving Mech[anical] Parts" as "Not Present," which strongly indicates that the DOT does not consider motor vehicles as "[m]oving [m]ech[anical] [p]arts." DOT, No. 915.473-010, 1991 WL 687865; see also Johnson v. Astrue, No. 08-2300, 2010 WL 2836796, at *7 (C.D. Ill. July 15, 2010) (unpublished) (rejecting the plaintiff's argument that "the ALJ failed to account for the discrepancies between the [DOT] and [the plaintiff's] past job because the ALJ improperly relied on the VE's testimony that [the p]laintiff could do his past job [] even though it requires working around cars, which . . . constitute 'hazards/large machines,'" and "conclud[ing] that cars do not constitute the kind of 'moving machinery' contemplated by the RFC").

In contrast, Plaintiff has demonstrated that apparent, unresolved conflicts exist between the Parking-Lot Attendant job and the RFC's preclusion of crisis situations and more than occasional interaction with the public. A requirement that an individual "patrol [the] area to _prevent_ thefts from parked automobiles," DOT, No. 915.473-010, 1991 WL 687865 (emphasis added), arguably could expose a worker to confrontations with car

thieves, which, without a reasonable explanation from the VE
(absent here), appears to conflict with the RFC's preclusion of
crisis situations. Similarly, the job's primary tasks, including
parking automobiles for <u>customers</u>, handing <u>customers</u> tags to
identify their vehicles, directing <u>customers</u> to parking spaces,
collecting parking fees from <u>customers</u>, and returning vehicles to
<u>customers</u>, would <u>all</u> involve interaction with the public. <u>See id.</u>
Moreover, although the <u>DOT</u> notes that "Talking" and "Hearing" occur
only "Occasionally," <u>id.</u>, it also classifies the job as "Serving"
(defined as "[a]ttending to the needs or requests of <u>people</u> . . .
or the expressed or implicit wishes of <u>people</u>," and an "<u>[i]mmediate</u>
response is involved," <u>DOT</u>, App'x B, "Explanation of Data, People,
and Things," 1991 WL 688701 (emphasis added)) and rates the degree
of interaction with "People" as "Significant," <u>DOT</u>, No. 915.473-
010, 1991 WL 687865; <u>see also</u> <u>Skaggs v. Colvin</u>, No.
2:14-CV-00239-TFM, 2015 WL 1842942, at *15 (W.D. Pa. Apr. 22, 2015)
(unpublished) (observing that Parking-Lot Attendant "job, as
described in the [<u>DOT</u>], also requires 'significant' contact with
people and is therefore likely inappropriate," given the
plaintiff's limitation to occasional contact with the general
public). The VE here did not explain how an individual limited to
occasional interaction with the public could nevertheless perform
the Parking-Lot Attendant job's customer-facing tasks. (<u>See</u> Tr.
79.)

Although Plaintiff has demonstrated that the ALJ failed to identify and resolve apparent conflicts between the DOT and the VE's testimony with regard to the Parking-Lot Attendant job,[9] that error remains harmless under the circumstances of this case, see generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"), because Plaintiff has not shown that such conflicts exist with respect to the Room Attendant job.

b. Non-Postal Mail Clerk

Plaintiff additionally maintains that an apparent conflict exists between the DOT's classification of the Non-Postal Mail Clerk job as requiring RDL 3 and the VE's testimony that an individual restricted to SRRTs could perform the job. (See Docket Entry 11 at 9-11.) In that regard, Plaintiff notes that RDL 3

---

[9] After the parties had completed briefing their cross-motions for judgment in this case, the Fourth Circuit held that jobs involving Reasoning Development Level ("RDL") 2 apparently conflicted with an RFC containing a limitation to short and simple instructions. Thomas v. Berryhill, 916 F.3d 307, 314 (4th Cir. 2019). A job's RDL reflects the degree of analytical ability required by the job, with the levels arranged in ascending order of complexity from level 1 to level 6. See generally DOT, App'x C ("Components of the Definition Trailer"), § III ("General Educational Development (GED)"), 1991 WL 688702. Moreover, in an earlier decision, the Fourth Circuit stated that it found "appropriate" reliance "on precedent addressing a simple tasks limitation when considering a simple instructions limitation." Keller v. Berryhill, 754 F. App'x 193, 197 n.4 (4th Cir. 2018). The DOT rates the Parking-Lot Attendant job as RDL 2, see DOT, No. 915.473-010, 1991 WL 687865, and thus an additional apparent conflict exists between the DOT's classification of the Parking-Lot Attendant job at RDL 2 and the VE's testimony that an individual limited to simple, routine, and repetitive tasks could perform that job (see Tr. 79).

requires the ability to "'[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic format'" and "'[d]eal with problems involving several concrete variables in or from standardized situations.'" (Id. at 9-10 (quoting DOT, App'x C ("Components of the Definition Trailer"), § III ("General Educational Development (GED)"), 1991 WL 688702).) According to Plaintiff, "this Court has previously held that there is an apparent conflict between jobs requiring [RDL 3] and a claimant's limitation to simple, routine, repetitive jobs." (Id. at 11 (citing Mullis v. Colvin, No. 1:11CV22, 2014 WL 2257188, at *1 (M.D.N.C. May 29, 2014) (unpublished) (Osteen, Jr., C.J.), and Weaver v. Colvin, No. 1:10CV582, 2013 WL 3989561, at *12-13 (M.D.N.C. Aug. 2, 2013) (unpublished) (Webster, M.J.), recommendation adopted, 2013 WL 4768178 (M.D.N.C. Sept. 5, 2013) (unpublished) (Eagles, J.).)

Recently, the Fourth Circuit found that an apparent conflict existed between jobs that require RDL 3 and a limitation to "short and simple instructions," providing the following rationale:

> In reaching this conclusion, we consider not only the [DOT]'s definitions of [RDL] 1 and 3, but also the [DOT]'s definition of [RDL] 2. [RDL] 2 — which is more demanding than [RDL] 1 but less demanding than [RDL] 3 — is defined as the ability to apply commonsense understanding to carry out *detailed but uninvolved* written or oral instructions.
>
> A limitation to short and simple instructions appears more consistent with [RDL] 1 or [RDL] 2 than with [RDL] 3. Indeed, it seems that such a limitation falls

somewhere between [RDL] 1 and 2. That is, a short and
simple instructions restriction shares the word "simple"
with the [RDL] 1 definition but could permit instructions
of more than two steps. On the other hand, it is not
entirely clear to us that a person limited to short and
simple instructions can also carry out [RDL] 2 jobs that
include "detailed but uninvolved" instructions. Because
[RDL] 3 is more demanding than [RDL] 2 by the very nature
of the Reasoning Development scale, it appears that [RDL]
3 jobs require more than the ability to carry out short
and simple instructions. That determination is also
supported by the fact that — unlike the definitions of
[RDLs] 1 and 2 — [RDL] 3's definition places no explicit
limitation on the complexity of the instructions to be
carried out; instead, [RDL] 3 describes only the form of
those instructions. We therefore conclude that an
apparent conflict exists between a limitation to short
and simple instructions and [RDL] 3 occupations.

Keller v. Berryhill, 754 F. App'x 193, 197-98 (4th Cir. 2018)

(internal quotation marks, brackets, footnotes, and citations

omitted).[10]

A few months later, the Fourth Circuit held that jobs

involving an RDL of 2 apparently conflict with a limitation to

"short, simple instructions," because RDL 2 entails "the ability to

carry out detailed but uninvolved written or oral instructions."

Thomas v. Berryhill, 916 F.3d 307, 314 (4th Cir. 2019) (emphasis

added). In that regard, the Court of Appeals noted:

This is not a categorical rule – some instructions,
particularly if they are well-drafted, may be

---

[10] The Fourth Circuit observed in a footnote that "[s]everal other courts
of appeals have relied on precedent addressing a simple tasks limitation when
considering a simple instructions limitation" and "conclude[d] that it [wa]s
appropriate to do the same in [Keller]." Keller, 754 F. App'x at 197 n.4
(emphasis added). Accordingly, the Court should find Keller's reasoning
applicable to limitations involving simple, routine, and repetitive tasks, as in
the instant case.

> simultaneously short, simple, detailed, and uninvolved.
> Even so, the conflict between [the plaintiff's]
> limitation to short, simple instructions and the VE's
> testimony that [the plaintiff] could perform jobs that
> include detailed but uninvolved instructions is as
> apparent as the conflict we identified in <u>Pearson</u>.

<u>Id.</u>

In light of <u>Keller</u> and <u>Thomas</u>, the ALJ erred by failing to resolve the apparent conflict between the <u>DOT</u>'s assignment of RDL 3 to the job of Non-Postal Mail Clerk and the VE's testimony that an individual limited to SRRTs could perform that job.[11] However, that error qualifies as harmless here, <u>see generally</u> <u>Fisher</u>, 869 F.3d at 1057 (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"), because Plaintiff has not shown that such conflicts exist with respect to the Room Attendant job.

c. Room Attendant

Lastly, Plaintiff alleges that apparent conflicts exist 1) between the <u>DOT</u>'s description of the duties of the Room Attendant job as including hanging drapes and the VE's testimony that an individual precluded from climbing ladders could perform the job, and 2) between the <u>DOT</u>'s description of the duties of the Room Attendant job which "clearly indicates that th[e] job is not

---

[11] Both <u>Keller</u> and <u>Thomas</u> post-dated the ALJ's decision in this case.

performed at a static workstation or workbench" and the VE's testimony that an individual requiring a sit/stand option twice an hour could perform the job. (Docket Entry 11 at 8 (citing <u>DOT</u>, No. 323.687-014, 1991 WL 672783).) Plaintiff highlights certain duties the <u>DOT</u> lists for the Room Attendant job that he believes would not allow a worker to sit or stand twice an hour, e.g., "sorting, folding and carrying linens, making beds, replenishing supplies, moving furniture, hanging drapes, rolling carpets and rendering assistance to patrons." (<u>Id.</u>) In addition, Plaintiff points out "that a [Room Attendant] 'performs other duties as described under CLEANER (any industry) I Master Title' (<u>id.</u> (quoting <u>DOT</u>, No. 323.687-014, 1991 WL 672783)), which include sweeping, vacuuming, dusting, polishing, washing windows, emptying wastebaskets, and replenishing supplies (<u>id.</u> at 9 (citing <u>DOT</u>, "Master Titles and Definitions," available at https://occupationalinfo.org /masters_1.html)). Contrary to Plaintiff's assertions, he has not shown "where the [VE's] testimony seem[ed] to, but d[id] not necessarily, conflict with the [<u>DOT</u>]," <u>Pearson</u>, 810 F.3d at 209.

Plaintiff's claim that "a requirement to hang drapes would require that he be capable of climbing a ladder" misses the mark. (Docket Entry 11 at 8.) Plaintiff does not explain why the task of hanging drapes would entail climbing a <u>ladder</u>, given that the <u>DOT</u>'s description for the Room Attendant job lists "Climbing" as "Not Present," <u>DOT</u>, No. 323.687-014, 1991 WL 672783. (Docket Entry 11

at 8.)  Similarly, Plaintiff merely <u>assumes</u> that, because the <u>DOT</u>'s listed duties for the Room Attendant job do not involve a "static workstation," they do not permit a sit/stand option.  (<u>Id.</u>) Furthermore, "[t]he [<u>DOT</u>] lists <u>maximum</u> requirements of occupations as <u>generally</u> performed, not the range of requirements of a particular job as it is performed in specific settings," and "[the] VE . . . may be able to provide <u>more specific information</u> about jobs or occupations than the [<u>DOT</u>]."  SSR 00-4p, 2000 WL 1898704, at *3 (emphasis added).

Here, the VE provided that specialized information and opined that the Room Attendant job accommodated a sit/stand option involving the ability to change positions twice an hour.  (<u>See</u> Tr. 79.)  To nevertheless find a conflict under such circumstances would impermissibly extend the holding in <u>Pearson</u> to merely "possible" conflicts.  <u>See</u> <u>Eddie v. Berryhill</u>, No. 5:16-CV-801-D, 2017 WL 4002147, at *6 (E.D.N.C. Aug. 24, 2017) (unpublished) (rejecting the plaintiff's conflict argument because "[the c]laimant move[d] beyond what is <u>apparent</u> and into the realm of what is <u>possible</u>" and noting that "[t]he Fourth Circuit in <u>Pearson</u> expressly declined to expand the ALJ's duty to include inquiry as to 'all possible conflicts'" (emphasis added) (quoting <u>Pearson</u>, 810 F.3d at 209)), <u>recommendation adopted</u>, No. 5:16-CV-801-D, 2017 WL 3995813 (E.D.N.C. Sept. 11, 2017) (unpublished); <u>see also</u> <u>Danielle Charlotte L. v. Commissioner of Soc. Sec.</u>, No. 2:18-CV-00166-JTR,

2019 WL 1460879, at *9 (E.D. Wash. Apr. 2, 2019) (unpublished) ("The [DOT] is silent as to whether the [Room Attendant] job[] identified by the [VE] allow[s] for a sit/stand option. Therefore, there was no conflict for the ALJ to resolve." (internal citations omitted)); Manley v. Colvin, No. ED CV 16-1179-E, 2016 WL 7191541, at *3-4 (C.D. Cal. Dec. 12, 2016) (unpublished) (noting that "[t]he [DOT] is [] silent on the specific sitting, standing, and walking requirements of the [Room Attendant] job[] . . ., including the issue of whether th[at] job[] can accommodate a sit/stand option," and holding that no apparent conflict existed "between the [DOT] and a [VE]'s testimony that a particular job can accommodate a sit/stand option[, because t]o hold otherwise would mean that [VEs] always create conflicts with the [DOT] whenever they mention any of the multitude of things about a job not expressly addressed in the [DOT]," and SSR 00-4p did not "require the discernment of such omnipresent 'conflicts'" (internal quotation marks, brackets, and citation omitted); Green v. Colvin, No. 1:10CV561, 2013 WL 3206114, at *11 (M.D.N.C. June 24, 2013) (unpublished) (Webster, M.J.) ("[T]he [DOT] is silent as to the availability of a sit/stand option for . . . particular positions. As such, it was proper for the ALJ to obtain and consider VE testimony in order to supplement the [DOT] job descriptions. The VE was qualified to determine which jobs an individual with [the p]laintiff's RFC could perform, and the ALJ properly relied on the VE's testimony to find [the

p]laintiff could perform other work that existed in significant numbers in the national economy."), <u>recommendation adopted</u>, 2013 WL 4811705 (M.D.N.C. Sept. 9, 2013) (unpublished) (Eagles, J.).

Finally, to the extent that an apparent conflict existed between the <u>DOT</u>'s description of the Room Attendant job and the VE's testimony that an individual requiring a sit/stand option twice per hour could perform that job, Plaintiff has not shown that the ALJ failed to <u>resolve</u> that conflict. As the above-quoted testimony makes clear, the VE affirmatively stated that "the information supporting the sit-stand option . . . is actually . . . based on my . . . training, education and experience in the areas of jobs placement and job analysis." (Tr. 79-80.) That testimony, and the ALJ's later express reliance upon it in adopting the VE's testimony at step five of the SEP (<u>see</u> Tr. 44-45), reasonably resolved any apparent conflict that might have existed. <u>See</u> <u>Danielle Charlotte L.</u>, 2019 WL 1460879, at *9 ("The ALJ satisfied [Social Security Ruling 83-12, <u>Titles II and XVI: Capability to Do</u> <u>Other Work – the Medical-Vocational Rules as a Framework for</u> <u>Evaluating Exertional Limitations Within a Range of Work or Between</u> <u>Ranges of Work</u>, 1983 WL 31253 (1983)] by seeking the testimony of a [VE]. Even if there had been an apparent conflict, the [VE] testified based on her professional experience, stating that her testimony about each identified job was based on her experience in

assisting and observing individuals, actually doing this job."
(internal quotation marks, brackets, and citation omitted)).

Accordingly, no apparent, unresolved conflicts existed between
the DOT's description of the Room Attendant job and the VE's
testimony that an individual with Plaintiff's RFC could perform
that job. The VE testified that 103,000 Room Attendant jobs
existed in the national economy (see Tr. 79), which constitutes a
significant number of jobs, see Hicks v. Califano, 600 F.2d 1048,
1051 (4th Cir. 1979) ("[The c]laimant contends that the light and
sedentary jobs described by the [VE] . . . do not exist in
significant numbers within the region. We do not think that the
approximately 110 jobs testified to by the [VE] constitute an
insignificant number."). Thus, Plaintiff's first assignment of
error ultimately demonstrates no basis for reversal or remand.

## 2. Res Judicata

Plaintiff also contends that the Commissioner's "assertion of
the affirmative defense of res judicata [in the Answer] was
improper" (Docket Entry 11 at 15 (bold font and single-spacing
omitted)), because neither the ALJ nor the Appeals Council
"mention[ed] the doctrine of *res judicata* or attempt[ed] to dismiss
[Plaintiff's] claim on these grounds" (id.). The record indicates
that Plaintiff filed previous applications for benefits in April
2006 and January 2015. (See Tr. at 85.) However, because neither

24

the ALJ nor the Appeals Council asserted the applicability of res judicata (see Tr. 1-6, 30-45), and the Commissioner does not assert it in connection with his instant motion for judgment (see Docket Entry 13), the Commissioner's inclusion of res judicata as an affirmative defense in the Answer (see Docket Entry 7 at 2) simply has no current bearing on the outcome of Plaintiff's case.

### III. CONCLUSION

Plaintiff has not established grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, Plaintiff's Motion for Summary Judgment (Docket Entry 10) be denied, and Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

August 6, 2019